IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY JOE LYONES, #A-83575, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 16-cv-00786-NJR |
| DOCTOR OMUGAH, | ) ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for consideration of the First Amended Complaint (Doc. 16) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Bobby Joe Lyones, an inmate who is currently incarcerated at Lincoln Correctional Center. Plaintiff claims that he suffered permanent damage to his left eye during his incarceration at Lawrence Correctional Center ("Lawrence"), when he received inadequate medical treatment for progressive vision loss from a glaucoma specialist at Marion Eye Center in 2014. He now seeks monetary damages against the specialist, Doctor Omugah.

## Merits Review Under 28 U.S.C. § 1915A

This case is before the Court for a preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints, including amended complaints, to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the amended complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### First Amended Complaint

Between 2009 and 2014, Plaintiff underwent multiple eye surgeries to correct progressive vision loss (Doc. 16, p. 5). He was initially seen by an unidentified eye doctor at Lawrence. The doctor referred him to Doctor Oak, a surgeon at Marion Eye Center in Mount Vernon, Illinois. Doctor Oak recommended surgery on Plaintiff's left eye. The doctor explained that surgery would obviate the need for eyeglasses. Plaintiff agreed to the recommended procedure (*id*.).

The surgery was not successful. Doctor Oak installed the wrong-sized lens in Plaintiff's left eye. He performed corrective surgery and, in the year that followed, regularly met with Plaintiff for follow-up appointments at Marion Eye Center. Even so, Plaintiff's vision continued to deteriorate (*id.*).

In 2010, Doctor Oak introduced Plaintiff to Doctor Omugah, a glaucoma specialist. Doctor Omugah examined Plaintiff's eyes, tested his vision, and reviewed his medical history. The allegations disclose no other contact with Doctor Omugah until four years later, when Plaintiff met with the doctor to discuss treatment of pressure buildup in his left eye (*id.*). On October 7, 2014, Doctor Omugah placed "a tube" and "two implants" in Plaintiff's eye during a surgical procedure that lasted eight hours (*id.* at 6). Following surgery, Doctor Omugah instructed Plaintiff to avoid using his "glaucoma eye drops" (*id.*).

Plaintiff complied and avoided the use of eye drops. In the weeks that followed the surgery, however, he suffered from increasing pain and pressure in his eye. The amended complaint does not indicate that Plaintiff made any attempt to notify the doctor about the symptoms or that the doctor was aware of his symptoms (*id.*).

Plaintiff transferred to Cook County Jail two weeks after surgery. Following his transfer, the pain in Plaintiff's left eye became so intense that he was sent to Stroger Hospital in Chicago, Illinois. There, he learned that the surgery performed by Doctor Omugah was "a failure" (*id.*). The intense pain in his left eye was caused by the buildup of pressure, a condition that the eye drops were designed to manage (*id.*).

Plaintiff claims that he suffered permanent damage to his left eye as a result of Doctor Omugah's treatment decisions. He is now legally blind and requires the use of bifocals, dark shades, and a "blind man['s] cane" (*id.*). Plaintiff also suffers from constant and intense pain that

includes migraine headaches. Plaintiff attributes his current condition to the deliberate indifference of Doctor Omugah and seeks monetary damages against him (*id*.).[1]

## Discussion

The amended complaint focuses on a single federal constitutional claim against Doctor Omugah for exhibiting deliberate indifference to Plaintiff's vision loss in violation of the Eighth Amendment (**Count 1**). For the reasons set forth below, the Court finds that the amended complaint articulates no viable claim against the doctor. At most, Plaintiff states a claim of medical negligence against Doctor Omugah under Illinois state law. Absent a viable federal constitutional claim against this defendant, the Court declines to exercise supplemental jurisdiction over the state law claim. Accordingly, Count 1 shall be dismissed without prejudice to Plaintiff pursuing relief in Illinois state court.

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law violated his constitutional rights. *See West v. Atkins,* 487 U.S. 42, 49 (1988). Plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). The Seventh Circuit has emphasized that "[t]his requirement is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Rodriguez*, 577 F.3d at 822-23 (*citing Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349-51 (1974)). Whether Doctor Omugah is considered a "state actor" is thus a key factor in determining whether Plaintiff can

---

[1] Although discussed at length in the statement of claim, Doctor Oak is not named as a defendant in the amended complaint. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). All claims against Doctor Oak are considered dismissed without prejudice from this action.

proceed with an Eighth Amendment claim against him in federal court. *Rodriguez* 577 F.3d at 822-30.

The Supreme Court and Seventh Circuit have offered district courts guidance in determining when nongovernmental health care providers that serve prisoners qualify as state actors. *Rodriguez*, 577 F.3d at 822-29. The focus of the court's analysis is on the particular function of the medical provider "in the fulfillment of the state's obligation to provide health care to incarcerated persons." *Id*. at 825.

Under the public function test, district courts must consider the relationship between the state, the health care provider, and the prisoner. *Id.* at 826. When a physician is employed by the state to provide medical services to state prison inmates, for example, that physician is considered a "state actor" whose conduct is "fairly attributable to the State." *Id*. at 824 (quoting *West*, 487 U.S. at 54). A contractual relationship between the state and the health care provider, although not determinative, is "an important factor in determining whether the private health care provider has entered into its relationship with the state and the prisoner on a *voluntary* basis." *Id*. at 827. If so, the private provider accepts responsibility to perform duties "in conformity with the Constitution." *Id*.

In addition, district courts consider the relationship between the provider and the inmate. To qualify as a state actor, the physician's relationship with the inmate must be direct, not attenuated. *Id*. at 828. An "incidental and transitory relationship with the state's penal system" or the prisoner is generally not considered voluntary. *Id*. Incidental or transitory relationships often arise in the context of treatment at a hospital emergency room.

The amended complaint includes virtually no allegations suggesting that Doctor Omugah was a "state actor" who is subject to suit under § 1983. It is unclear what relationship exists

between the state, the doctor, and Plaintiff. In the amended complaint, Plaintiff alleges that the doctor worked "outside the facility" (Doc. 16, p. 4). Plaintiff admits that he made no attempt to exhaust his administrative remedies against this defendant because his complaint is "not about what happened in the institution but what happened at Marion Eye Center" (*id*.). Plaintiff mentions nothing about a contractual relationship between the doctor and the state. Further, his relationship with the doctor appears to be transitory in nature. The conduct giving rise to his claims against Doctor Omugah occurred on a single day, *i.e.*, October 7, 2014, under what Plaintiff describes as emergency circumstances (*id*. at 5-6). This sort of incidental relationship does not transform an outside medical provider into a "state actor" for purposes of § 1983. Count 1 is subject to dismissal on this basis alone.

Even if the Court assumes that Doctor Omugah qualifies as a "state actor," however, the amended complaint still supports no claim against Doctor Omugah under federal law. Plaintiff's claim arises under the Eighth Amendment, which prohibits cruel and unusual punishment against prisoners. Deliberate indifference to the serious medical needs of prisoners constitutes cruel and unusual punishment. *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim for an Eighth Amendment violation, a prisoner must show that he suffered from a serious medical need (*i.e.*, an objective standard), and state officials acted with deliberate indifference to the prisoner's health or safety (*i.e.*, a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

The medical need that Plaintiff describes in the amended complaint satisfies the objective component of this claim for screening purposes. The Seventh Circuit has recognized that vision loss associated with an untreated eye condition, such as glaucoma, may satisfy the objective

component of an Eighth Amendment claim. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Moreover, when the failure to treat a condition could "result in further significant injury or the unnecessary and wanton infliction of pain," the condition is also considered sufficiently "serious" to support an Eighth Amendment claim. *Id.* But the Court's analysis of Plaintiff's claim does not end there.

The allegations must also suggest that Doctor Omugah responded to Plaintiff's serious medical need with deliberate indifference, which is shown when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and by "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The Eighth Amendment does not entitle prisoners to "demand specific care" or "the best care possible;" it only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Inadvertent error, negligence, gross negligence, and even ordinary malpractice do not give rise to an Eighth Amendment claim against a defendant. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *accord Berry*, 604 F.3d at 440 ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution.").

The allegations simply do not suggest that Doctor Omugah responded to Plaintiff's serious medical need with deliberate indifference. The doctor met with Plaintiff once in 2010, and Plaintiff offers no criticism of the doctor's treatment of him during that appointment. He does not claim that the doctor should have treated him for any particular condition at that time and failed to do so.

Instead, Plaintiff focuses on the care he received from Doctor Omugah on October 7, 2014. He describes the surgery that Doctor Omugah performed as being "inappropriate" for Plaintiff's undisclosed condition and says, in conclusory fashion, that it "was a failure" (Doc. 16, pp. 5-6). Conclusory allegations do not support federal constitutional claims. *See Rodriguez*, 577 F.3d at 821 (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

Even if the Court accepts these allegations as true, the amended complaint still fails to state a deliberate indifference claim against Doctor Omugah. Plaintiff complains of no delay in or denial of treatment that exacerbated his injuries. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment may constitute deliberate indifference only "if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). Plaintiff does not allege that he notified Doctor Omugah of the symptoms he experienced after surgery. He did not request and was not denied treatment for any particular symptoms by this defendant. Doctor Omugah therefore lacked the knowledge necessary to support a claim of deliberate indifference against him.

The doctor's treatment decisions were, at most, negligent. A claim of negligence arises under Illinois state law. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th

Cir. 1995)). The facts giving rise to the Eighth Amendment claim are identical to the facts that support a state law negligence claim against the doctor.

Absent a viable federal claim, this Court declines to exercise supplemental jurisdiction over the state law negligence claim. "[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial. Indeed, this presumption counsels that the better practice is for district courts to state explicitly their reasons for taking the opposite course." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). In light of this, the Court declines to consider the merits of Plaintiff's negligence claim, and this claim shall be dismissed without prejudice. Plaintiff is not prohibited by this Order from pursuing relief in state court.

That being said, the Court cautions Plaintiff to review the statutory requirements for bringing a claim of negligence in Illinois. To date, he has failed to meet the basic requirements for bringing a claim of medical negligence or medical malpractice. He must comply with 735 ILCS § 5/2-622. Under Section 2-622, a plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the Complaint); or (3) that the plaintiff has made a request for records but the

respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. § 5/2-622(a).[1] A separate affidavit and report shall be filed as to each official. *See* 735 ILL. COMP. STAT. § 5/2-622(b).

Plaintiff failed to file the required certificate or affidavit with his complaint (Doc. 1) and his amended complaint (Doc. 16). He cannot proceed with his claim in Count 1, even in state court, unless he does so. *See* 735 ILCS 5/2-622. Failure to file the affidavit or certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Plaintiff should remain mindful of this requirement as he chooses his future course of action.

## Pending Motion

Along with the amended complaint, Plaintiff filed a second motion to appoint counsel (Doc. 18), which is **DENIED**. By all indications, his claim against Doctor Omugah arises under Illinois negligence law, not the Eighth Amendment. The recruitment of counsel to represent Plaintiff would not enable him to state a viable federal constitutional claim against this defendant. The allegations offer no suggestion that any such claim exists.

## Disposition

**IT IS HEREBY ORDERED** that the First Amended Complaint (Doc. 16) and this action are **DISMISSED** without prejudice for failure to state a claim upon which relief may be

---

[1] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. § 5/2-622 (West 2013).

granted. This Order does not preclude Plaintiff from pursuing his claim of medical negligence against Doctor Omugah in Illinois state court.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011) (noting that a "dismissal is a dismissal, and provided that it is on one of the grounds specified in [§] 1915(g) it counts as a strike, . . . , whether or not it's with prejudice.").

If Plaintiff wishes to appeal this Order, he may file a Notice of Appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  November 29, 2016

                                                    **NANCY J. ROSENSTENGEL**
                                                    **United States District Judge**